WO

KM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Charles Hall,<br><br>Plaintiff,<br><br>v.<br><br>Arizona State Prison, et al.,<br><br>Defendants. | No.   CV-23-00353-TUC-SHR<br><br>**ORDER** |

Self-represented Plaintiff Anthony Charles Hall, who is confined in the Arizona State Prison Complex (ASPC)-Douglas and proceeding in forma pauperis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and subsequently filed a First Amended Complaint. The Court dismissed the First Amended Complaint with leave to amend. On March 8, 2024, Plaintiff filed a Second Amended Complaint, which the Court dismissed with leave to amend.

Pending before the Court are Plaintiff's July 29, 2024 Third Amended Complaint (Doc. 22); September 16, 2024 Motion for Injunction (Doc. 24); September 20, 2024 Motion for Injunction Against Federal Election Fixing (Doc. 25); and October 30, 2024 Motion for Injunction Against Records (Doc. 26). The Court will deny the Motions and dismiss the Third Amended Complaint and this action.

**I.   Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised legally frivolous or malicious claims, failed to state a claim upon which relief may be granted, or sought monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines a pleading could be cured by the allegation of other facts, a self-represented litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

. . . .

## II. Third Amended Complaint

In his seventeen-count Third Amended Complaint, Plaintiff sues the following Defendants: Arizona Department of Corrections, Rehabilitation and Reentry (ADC); ADC Director Ryan Thornell; Correctional Officers III Eva Lopez, Ruben Prieto, Segura, and Leal; Correctional Officers II A.A. #8485, Anaya, and Frisby; ASPC-Yuma Warden J. McAdorey and Deputy Warden A. Camacho; ASPC-Douglas Warden Thompson, Deputy Warden M. Yubeta, and Captain Atchinson; Sergeant Moreno; Correctional Officers IV Rivera and Gutierrez; the Internal Revenue Service (IRS); the United States Postal Service (USPS); United States President Joe Biden and Vice President Kamala Harris; the Democratic National Committee; Grant County, Kentucky, Judge Thomas Funk and Judicial Center Clerk Wray Jump; the Arizona Department of Health Services; NaphCare; and NaphCare Administrator Kimberly Esquer. Plaintiff seeks monetary damages and injunctive relief.

## III. Discussion

To state a § 1983 claim, a plaintiff must show (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges, or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Moreover, although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal

1 interpretation of a civil rights complaint may not supply essential elements of the claim not
2 initially pled. *Id.*

## IV.  Federal Defendants

"Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West v. Atkins,* 487 U.S. 42*,* 46 (1988)). Neither federal agencies nor federal officials act under color of *state* law and therefore generally cannot be sued under § 1983. *See Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) ("[S]ection 1983 only provides a remedy against persons acting under color of state law" and does not apply to "federal defendants act[ing] pursuant to federal laws.")

Moreover, sovereign immunity prevents *Bivens*[1] actions against the United States, its agencies, or its employees in their official capacities. *Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir. 1985); *Holloman v. Watt*, 708 F.2d 1399, 1401–02 (9th Cir. 1983); *see also Gerritsen v. Consulado General De Mexico*, 989 F.2d 340, 343 (9th Cir. 1993) (concluding federal agencies are immune from suit and the district courts lack jurisdiction over them absent express statutory authorization); *see also Rider v. U.S.P.S.*, 862 F.2d 239 (9th Cir. 1988) (holding sovereign immunity bars claim based on the failure to deliver mail within the time promised by a USPS employee); *Anderson v. U.S.P.S.*, 761 F.2d 527 (9th Cir. 1985) (dismissing claim based on a stolen piece of registered mail). Accordingly, the Court will dismiss Defendants Biden, Harris, IRS, and USPS, and Counts Ten and Eleven.[2]

---

[1] "Actions under § 1983 and those under *Bivens* [*v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)] are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996) (quoting *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991)).

[2] In Count Ten, Plaintiff alleges, since 2018, his tax refund and stimulus checks have been denied or lost. Plaintiff wrote to Defendant IRS but claims they "keep lying to [him], saying this collection agency took [it], or that one." Plaintiff claims USPS workers in Needles, California, stole his refund check and Defendant IRS is "denying [him] proper due process to recover [his] stolen stimulus, plus [his] other tax refund."

In Count Eleven, Plaintiff alleges Defendants Biden, Harris, and the Democratic National Committee have "normalized corruption in government and the legal system" because in 2020, he attempted to vote and was denied. Plaintiff claims he "did out loud request everyone vote for Trump on [his] way out though." Plaintiff also makes a lengthy

## V. Democratic National Committee

Plaintiff has not alleged facts demonstrating the Democratic National Committee acted under color of state law. The Court will therefore dismiss this Defendant.

## VI. State Defendants

ADC and the Arizona Department of Health Services are not proper Defendants. Under the Eleventh Amendment to the Constitution of the United States, a state or state agency may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Furthermore, "a state is not a 'person' for purposes of section 1983. Likewise 'arms of the State' such as the Arizona Department of Corrections [or Department of Health Services] are not 'persons' under section 1983." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (internal citation omitted). Therefore, the Court will dismiss Defendants ADC and Arizona Department of Health Services.

## VII. Defendants Jump and Funk

In Count Twelve, Plaintiff alleges in the Grant County Kentucky District Court he "had some people abusing the child support system to steal [the] inheritance [his] mother left him." Plaintiff alleges he attempted to challenge the court order but was denied due process when Defendant Funk ordered him to pay an appellate filing fee and denied him a waiver of the fee. He also claims Defendants USPS or Defendant Jump "stopped [his] due process, 2024."

Judges are absolutely immune from § 1983 suits for damages for their judicial acts except when they are taken "in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). An act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his or her judicial capacity. *Stump*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir.

---

allegation regarding his belief about China creating the Coronavirus and "plac[ing] Joe Biden as U.S. President," and describes his plans for a new "U.S. Congress building, somewhere between Dallas, Texas, and Austin, Texas."

- 5 -

1990). This immunity attaches even if the judge is accused of acting maliciously and corruptly, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), or of making grave errors of law or procedure, *see Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988). Accordingly, Defendant Funk is immune from suit.

Moreover, "[c]ourt clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987). Failing to file pleadings and refusing to transmit trial transcripts are within the scope of a court clerk's quasi-judicial duties. *See Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996). Court clerks enjoy this quasi-judicial absolute immunity for their actions even if their acts result in "'grave procedural errors.'" *Mullis*, 828 F.3d at 1390 (quoting *Stump*, 435 U.S. at 359). Accordingly, Defendant Jump is immune from suit.

The Court will dismiss Count Twelve and Defendants Funk and Jump.

**VIII. Access to the Courts**

The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to litigate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356.

As a matter of standing for an access-to-courts claim, a plaintiff must show he suffered an "actual injury"—i.e., "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation omitted); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" (citation omitted)); *cf. Silva v. DiVittorio*, 658 F.3d

1090, 1104 (9th Cir. 2011), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015) (actual injury alleged where plaintiff claimed pending lawsuits had been dismissed as the result of defendants' actions). A prisoner must demonstrate defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous or arguable claim he wished to present. *Lewis*, 518 U.S. at 353 and n.3.

Moreover, where a prisoner is asserting a backward-looking denial of access claim—seeking a remedy for a lost opportunity to present a legal claim— he must show, among other things, "the loss of a 'nonfrivolous' or 'arguable' underlying claim." *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150 (2009). A plaintiff does not have to show his claim would have ultimately been successful on the merits, *id.*, but he must show it had arguable merit, *Lewis*, 518 U.S. at 353 n.3.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

**IX.   Count One**

In Count One, Plaintiff alleges, while confined in ASPC-Yuma, he was denied access to DVDs produced as part of discovery in Plaintiff's previously filed case, CV-21-08199-PHX-GMS (DMF). Plaintiff claims he asked, in person and via inmate letters, to view the DVDs, but Defendants A.A. #8485, Lopez, and Prieto, who "were under D.W. A. Camacho and Warden J. McAdorey, also all of ADCRR," denied is requests. He contends Prieto and Lopez lied and said they did not have the DVDs. Plaintiff alleges he was prevented from reviewing the evidence, in violation of his due process rights. After Plaintiff was transferred to ASPC-Douglas, he was able to view the DVDs. As his injury,

Plaintiff states he could not properly litigate his civil case and "it caused it to go into appeal[;] this is another $505, much paper and work [Plaintiff has] to do."

Plaintiff's lawsuit in CV-21-8199 involved a sheriff's deputy's alleged used of excessive force during Plaintiff's arrest. This is not a collateral attack on Plaintiff's sentence or a challenge to the conditions of his confinement.[3] Accordingly, the Court will dismiss Count One for failure to state a claim.

**X.    Count Two**

In Count Two, Plaintiff claims he was denied access to the courts. Plaintiff sent letters the Arizona Supreme Court but, "the [Arizona] Supreme court acts like they received none of it until after the deadline is over." Plaintiff has also had mail sent to the courts "come back as return to sender." Plaintiff sent a letter to a witness, and "someone stamped 'legal mail' over the outgoing address to keep it from getting to its destination." Plaintiff cannot contact an expert witness in a case and cannot reach an attorney who "wants to represent [Plaintiff] to [a] parole type board." Plaintiff has an active civil case in another state and "can no longer reach them." He claims prison staff are "cutting off his communication" to steal a check sent to Plaintiff and cash it. He alleges "all mail is illegally censored and stolen" and "all legal calls [he] request[s] are denied." He claims staff are wrongfully trying to keep him imprisoned and "steal anything they can." He asserts "these injustices are done by [Defendants] Moreno, the USPS, and various ASPC staff in positions of power under D.W. Yubeta, and Warden Thompson, also all of ADCRR."

Plaintiff's allegations in Count Two are too vague to state an access to courts claim. First, Plaintiff has not alleged facts showing his petition for review to the Arizona Supreme Court was "nonfrivolous" or contained an "arguable underlying claim." Further, Plaintiff's allegations regarding his mail are entirely speculative and not linked to a specific detention

---

[3] Moreover, the Court granted summary judgment in CV-21-08199 based on undisputed facts offered by the defendant in that case and Plaintiff's own statements made during his deposition. *See* Doc. 79 in CV-21-08199. Finally, Plaintiff's appeal of the Judgment in CV-21-08199 is still pending. *See Hall v. Mohave County Sheriff's Department*, No. 23-1967 (9th Cir. 2023).

officer or other state actor. Plaintiff's allegations about Defendants Moreno, Yubeta, Thompson and "all of ADCRR" being liable for mishandling his mail are insufficient. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint in which plaintiff referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Plaintiff has therefore failed to state a claim in Count Two and the Court will dismiss this claim.

## XI. Count Five

In Count Five, Plaintiff claims he was awarded $391 in damages in a case in the Grant County District Court in Kentucky. Plaintiff alleges he arranged to have his father cash the check and send the money to Plaintiff's "books." Plaintiff called his father, and his father told him someone had changed Plaintiff's e-mail password. Plaintiff grieved this issue, but it went unanswered. Plaintiff was then "deleted/removed by Securus Tech or ASPC Staff [and] none of [his] letters regarding the [Kentucky] case c[a]me back." He claims the staff refuse to allow him to call "and check on this." He claims they "want to censor [his] communication and cash the check when it comes." Plaintiff claims the "CIP," mail handlers, USPS, "all of ADCRR," Defendant Leal and his supervisors are responsible.

These allegations are too vague to state an access to courts claim. Plaintiff does not allege when any of these events occurred; he has not alleged whether his Kentucky lawsuit was a nonfrivolous attack on his conviction or conditions of confinement; and he has not alleged whether he has attempted to contact the Kentucky court via any means other than telephone. Accordingly, Plaintiff has not alleged sufficient facts to demonstrate he suffered an actual injury. Plaintiff's claim Defendants want to "cash the check when it comes in"

is entirely speculative and not supported by any factual allegations. The Court will dismiss Count Five.

**XII.  Count Six**

In Count Six, Plaintiff alleges he filed a civil case in Maricopa County and "CIP staff . . . let [him] pursue this case up until the superior court charged [him] the $370 filing fee." Plaintiff claims "now [he] can't get a letter out, [he gets] no replies." Plaintiff has requested to make a legal call to the court clerk, but his requests are denied. Plaintiff states the case involves legally changing his name for religious purposes, to prevent people from stealing his identity, and to prevent people from stealing his government benefits. Plaintiff asserts "ASPC staff are obviously delusional wanna be pimps, killing our country" and they are "re-affirming the body[-]double stealing [Plaintiff's] U.S. citizenship in USDC No. 3:21-cv-08199, now Ninth Circuit Appeals No. 23-1967." He claims the CIP staff at ASPC-Douglas, Defendant Leal, the Deputy Warden and Warden, and "all of ADCRR" are "allowing this."

These allegations are insufficient to state an access to courts claim. Plaintiff's proceedings to change his name are neither an attack on his conviction or sentence nor a challenge to his conditions of confinement. The Court will dismiss Count Six for failure to state a claim.

**XIII.  Count Fourteen**

In Count Fourteen, Plaintiff claims he is denied access to the courts because he has had "various problems accessing attorneys and expert witnesses." He claims an attorney wanted to represent him pro bono before the Executive Board of Clemency, Plaintiff filled out forms and sent them back, but he is now unable to reach the attorney and is denied legal calls. Defendant Gutierrez asked Plaintiff if he had the letter from the attorney, but Plaintiff said no, he had to send it back. He claims Defendant Leal "tried to steal the envelope from Lee Stein, all the evidence [Plaintiff] had of the attorney." According to Plaintiff, his post-conviction relief attorney tried to write to him "every 40 days for about 7 months." Plaintiff claims he was eventually allowed to communicate with the attorney, but "she did damage

in [his] PCR instead of looking at the facts." Plaintiff claims anytime he "grieve[s] this injustice, . . . [Defendant] Gutierrez just collects intel to further damage [Plaintiff's] cause, she even is denying assigning case numbers to [Plaintiff's] grievances so [he is] unable to appeal to the highest level."

Plaintiff's allegations are too vague to state a claim. Plaintiff provides almost no details about the attorney he tried to contact regarding clemency proceedings. Plaintiff does not state when the attorney contacted him or when he attempted to reply, and Plaintiff has not described how he attempted to contact the attorney beyond requesting legal calls. Plaintiff's allegation Defendant Leal tried to "steal the envelope" is also vague; Plaintiff does not describe the date this alleged incident occurred, what exactly Defendant Leal did, or how this harmed Plaintiff.

With respect to Plaintiff's claim he did not receive mail from his post-conviction relief attorney, Plaintiff has not alleged when he was denied the mail or identified specific staff responsible for confiscating his mail. As the Court has previously explained, conclusory allegations against a large group of Defendants, such as "ASPC staff," are insufficient to state a claim for relief.

Finally, Plaintiff's allegation Defendant Gutierrez failed to process his grievances fails to state a claim. Prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), but "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (concluding jail grievance procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (noting violations of grievance system procedures do not deprive inmates of constitutional rights). "[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). In addition, "[t]he right to petition the government for redress of grievances . . . does not

guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (stating failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).

Accordingly, the Court will dismiss Count Fourteen for failure to state a claim.

**XIV. Count Fifteen**

In Count Fifteen, Plaintiff claims he has "some flash drives [he has] been asking to see [and] print off 5-10 pages for [his] habeas corpus," but his requests have been ignored. Plaintiff wrote and spoke to Defendant Leal about the issue and grieved the issue to Defendant Yubeta. Plaintiff contends this has been "going on about three weeks," and he is being denied "fair legal access."

These allegations are insufficient to state an access to courts claim. Plaintiff's habeas petition is still pending in CV-23-08516 and the Court in that case is currently awaiting the State's response to Plaintiff's petition. At this juncture, Plaintiff's habeas petition has already been filed and the Court has not ordered further briefing or an evidentiary hearing in relation to that case. Accordingly, Plaintiff has failed to demonstrate an actual injury by being denied access to the flash drives for three weeks. The Court will dismiss Count Fifteen.

**XV. Count Sixteen**

In Count Sixteen, Plaintiff alleges he was supposed to receive a court-approved form with the Court's Order at Document 21. Plaintiff never received the form in the mail and "can only assume someone is keeping this mail from [him]." Plaintiff asserts Defendants Thompson, Yubeta, and Atchinson "keep the people employed here who do this." As his injury, Plaintiff states "someone from the Clerk, to me, is not delivering me Doc. #21 in this case via USPS as ordered. Lucky e-file exists, or I would have missed this 3rd amended complaint chance."

Plaintiff does not allege he suffered an actual injury and, indeed, has filed his Third Amended Complaint on the court-approved form.  To the extent Plaintiff claims he did not receive a paper copy of the form in the mail, he should note the facility in which he is housed participates in e-filing, so the Court does not send paper copies of its orders or forms; all correspondence to and from the Court is conducted electronically.  The Court will dismiss Count Sixteen for failure to state a claim.

**XVI.   Religion**

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted).  However, free exercise rights are "necessarily limited by the fact of incarceration" and "may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987).  To state a First Amendment free exercise claim, a plaintiff must allege a defendant substantially burdened his religious practice without a justification reasonably related to legitimate penological interests.  *Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008).  The religious practice or exercise at issue must be rooted in sincerely held religious belief and not in "'purely secular' philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citation omitted).

**XVII. Count Three**

In Count Three, Plaintiff alleges violations of his First Amendment right to free exercise of religion.  Plaintiff states he is a "Shamanistic New Age Buddhist, [which is] a combination of Native American and Buddhism" and "teaches about various spirits and how to combat them."  Plaintiff claims his hair "and very mild facial hair honors [his] ancestors and connects [him] with past sages."  He alleges "the staff at ASPC-Douglas/Mohave want [him] to look like a white Christian, so they can lie about [him] and say [he] is racist, to cover for their racism."  Plaintiff contends Defendant Anaya, her supervisor, and "all of ADCRR" will not let him update his prison photo to reflect his religion.  He also claims "they harass [him] to try to look the way they want [him] to look

even though many others have photos very similar to the style that honors [Plaintiff's] ancestors." Plaintiff claims it is "nearly impossible to practice [his] religion," and causes him emotional pain.

These allegations are too vague to state a First Amendment free exercise claim. Plaintiff does not allege how Defendants' refusal to update Plaintiff's prison photo substantially burdens the practice of his religion, nor has he alleged Defendants acted without a legitimate penological purpose. The Court will dismiss Count Three for failure to state a claim.

**XVIII.     Count Thirteen**

Plaintiff also categorizes Count Thirteen as a claim for violation of his First Amendment right to free exercise of religion. Plaintiff claims his grandfather was Native American and Plaintiff wanted to "reach out to his [grandfather's] tribe" because his religion teaches honoring of ancestors. Plaintiff contends the "admin at ASPC-Douglas/Mohave are keeping him from authenticating his Native American Heritage, they keep [him] from obtaining military documents, birth certificates, showing [his] grandfather as Native American," and will not permit Plaintiff to have a photo of his grandfather. Plaintiff was told he can request his own birth certificate, but staff will not allow him to request his grandfather's. Plaintiff asserts this keeps him from authenticating his Native American heritage.

Plaintiff does not allege facts demonstrating the denial of his grandfather's birth certificate substantially burdens the practice of his religion, nor has he alleged prison administration does not have a legitimate penological purpose in preventing him from requesting another individual's birth certificate. The Court will dismiss Count Thirteen for failure to state a claim.

. . . .

. . . .

**XIX. Count Four**

In Count Four, Plaintiff alleges he is denied access to higher education and federal programs, in violation of his due process rights. Plaintiff claims he consolidated his student loans and "got out of default" so he could continue his education. He claims he is being denied a college education by "Del Le Torre, the Ashland liaison at the prison, [who] ignores [Plaintiff's] requests." Although he has a payment plan, Plaintiff claims he received one of his bills a month late so he "figures the plan is to force [him] back into default." He also claims the Federal Education Department never received his "IDR Application" and the USPS and ASPC-Douglas mail staff, who are supervised by Defendants Moreno, Yubeta, and Thompson, held his mail.

First, Plaintiff does not have a constitutional right to educational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does not violate constitutional rights); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (no right to vocational course for rehabilitation); *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir.1985) (no constitutional right to jobs and educational opportunities). Accordingly, Plaintiff does not have a due process right to enroll in education programs.

Second, to the extent Plaintiff claims prison staff wrongfully held his mail, his allegations are too vague to state a claim. Plaintiff does not allege when his mail was held or identify the staff person responsible for holding his mail. Defendants Yubeta, Thompson, and Thornell are not liable under § 1983 simply because they are the supervisors of individuals who allegedly violated Plaintiff's constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor*, 880 F.2d at 1045. The Court will therefore dismiss Count Four for failure to state a claim.

**XX. Count Seven**

In Count Seven, Plaintiff alleges in 2021, while he was in jail, he called his bank about a monthly fraudulent gym membership charge. The bank stopped the monthly fee,

but "reset all [Plaintiff's] security questions." When he arrived at prison, Plaintiff wrote them "to set up a way to have the remaining $496 sent, but with no luck." Plaintiff asked to call the bank, but his request was denied. He assumes the money stolen, "maybe by ASPC staff."

Plaintiff's assumption "ASPC staff" stole money sent to him from his bank account is entirely speculative, and Plaintiff offers no facts in support of this claim. The Court will dismiss Count Seven for failure to state a claim.

**XXI. Count Eight**

Plaintiff categorizes Count Eight as a retaliation claim. He alleges ASPC-Yuma staff would not let him view the DVD evidence in CV-21-08199, but after he arrived at ASPC-Douglas, Correctional Officer Montano helped him. Plaintiff heard rumors that Correctional Officer Montano was forced to resign after helping Plaintiff view the DVDs. Plaintiff claims staff tried to convince a medical employee to lie, "so as to throw [him] in a medical hole" and another correctional officer "made a false report" and another "guard faked a passing out." Plaintiff "senses [this was] to keep people from accessing fair legal proceedings." As his injury, Plaintiff states Correctional Officer Montano lost her job, "maybe her house, maybe her freedom," and he is "unsure how deeply this retaliation is hurting her."

A viable claim of First Amendment retaliation contains five basic elements: (1) a state actor took some adverse action against an inmate (2) because of (3) the prisoner's protected conduct, and such action (4) chilled the inmate's exercise of his First Amendment rights (or the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Robinson*, 408 F.3d at 567–68; *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (noting a retaliation claim requires an inmate to show (1) the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

To the extent Plaintiff claims he experienced retaliation, his allegations are too vague to state a claim. Plaintiff does not identify the officers who allegedly retaliated against him, nor does he assert facts showing specific defendants took adverse action against him because of his protected conduct. To the extent Plaintiff claims Correctional Officer Montano was subjected to retaliation for helping him, he fails to state a claim because a plaintiff may only assert his own rights and cannot assert the legal rights or interests of third parties. *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 610 (9th Cir. 2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

The Court will dismiss Count Eight for failure to state a claim.

**XXII. Count Nine**

In Count Nine, Plaintiff alleges he has pain in his right arm because he is "38 years old, so 38% old man." He contends he previously received Naproxen from the medical unit, but ADC has been cutting costs and denied his last three requests for Naproxen. He claims a "male doctor" tried to convince him to enroll in the "program for [suboxone] for pain relief." Plaintiff asserts he is "stuck on a fence, feel old man pains or get strung out on [suboxone]." He states he has no money for medications and claims Arizona Governor Hobbs should "invest in the community . . . not . . . in this prison scam."

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Jett*, 439 F.3d at 1096.

Plaintiff does not allege facts showing the pain in his arm was a "serious medical need" or he is at substantial risk of suffering serious harm without Naproxen. Nor does he allege facts showing the "male doctor" was aware of a serious medical need but failed to act. The Court will dismiss Count Nine for failure to state a claim.

**XXIII.      Count Seventeen**

In Count Seventeen, Plaintiff alleges prisoners are not allowed to take sporks outside of the chow hall even though they are permitted to purchase food items like beans or soups from the canteen. Plaintiff claims inmates are forced to eat food with their hands, identification cards, "or whatever [the]y can whip up at [their] homes." Plaintiff asserts this is cruel and unusual punishment.

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the deprivation alleged must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "'deliberate indifference' to inmate health or safety." *Id.* (citation omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff's allegation he is prohibited from taking a spork to his cell and is forced to eat canteen-purchased food with his hands does not rise to the level of a constitutional violation because denial of a spork does not place Plaintiff in substantial risk of suffering serious harm. The Court will therefore dismiss Count Seventeen.

**XXIV.     Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Third Amended Complaint, the Court will dismiss his Third Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Third Amended Complaint without leave to amend.

**XXV. Motions for Injunction**

In his Motion for Injunction Against Retaliation, Plaintiff seeks an order generally prohibiting Defendants from retaliating against him. In his Motion for Injunction Against Federal Election Fixing, Plaintiff describes a news program he recently watched but does not make a request for relief. In his Motion for Injunction Against Records, Plaintiff asks the Court order his birth certificate to be sent to the Court. Because the Court will dismiss this case, the Court will deny as moot Plaintiff's Motions for Injunction.

. . . .

. . . .

**IT IS ORDERED:**

(1) Plaintiff's Motion for Injunction Against Retaliation (Doc. 24), Motion for Injunction Against Federal Election Fixing (Doc. 25), and Motion Against Records (Doc. 26) are **denied**.

(2) The Third Amended Complaint (Doc. 22) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(3) The Clerk of Court must make an entry on the docket stating the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(4) The docket shall reflect the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

Dated this 8th day of November, 2024.

*Honorable Scott H. Rash*
United States District Judge